This is an appeal by the supervisor of the state inheritance tax and escheat division from *Page 605 
a decree fixing the amount of inheritance tax to be paid by a decedent's estate.
The facts relative to the case are these: Anna Eliza Ward died testate on December 23, 1931. Her will was admitted to probate in Yakima county on January 13, 1932. Three appraisers, one of whom was nominated by the supervisor of inheritance tax and escheat division, were appointed by the court on February 5, 1932. Inventory and appraisement was filed March 10, 1932, showing an estate in Yakima county valued at $152,573.89, and an estate in King county valued at $1,000, or a total of $153,573.89. The inventory also contained a statement of the assessed valuation of the real estate, as required by Rem. Rev. Stat., § 11211-a [P.C. § 7062-1].
The executrix sent inheritance tax reports to the supervisor showing that the amount of tax due the state was $2,608.10, and accompanied her reports with checks totaling that amount. The executrix also made report of Federal estate tax to the department of internal revenue. An audit by that department resulted in raising the fixed total value of the estate from $153,573.89 to $183,222.97, which was an increase of $29,649.08.
The representatives of the estate consented to such increase of values so far as the Federal estate tax was concerned, and waived their right to have such increase reviewed by the Federal court. Copies of the Federal estate tax return, the department's letter increasing the valuations, and the consent to the increase by the estate, respectively, were filed with the state supervisor. Before the state inheritance tax was paid, the supervisor had notified the attorneys for the estate that final determination and adjustment as to values and amount of inheritance tax would be held open pending settlement with the Federal government. *Page 606 
Considerable correspondence then ensued between the attorneys for the estate and the supervisor with reference to the amount of inheritance tax to be paid the state. The representatives of the estate contended in their correspondence that the amount of the tax was determinable by the appraisement made in the estate; the supervisor contended that the amount was to be based on the valuation as increased by the Federal government. At the hearing before the court, the supervisor made the additional contention that, for the purpose of computing the inheritance tax, the market value of the real estate and improvements thereon was to be determined by the assessed valuation fixed by the taxing officials of the county and state, as prescribed by Rem. Rev. Stat., § 11211-a [P.C. § 7062-1].
The estate being ready to be closed, and the executrix and the supervisor being unable to agree as to the amount of inheritance tax to be paid the state, the executrix filed a petition in the superior court to have the amount judicially determined. The court, upon a hearing, found that the amount paid by the estate, namely, $2,689.06, was the correct amount, and entered its decree accordingly. From that decree, the supervisor took an appeal to this court, where the case was argued February 18, 1935.
Upon the appeal, the appellant supervisor presented two assignments of error: (1) That, the respondent executrix having consented to the increase of valuation made by the Federal government, she was bound thereby, for the purposes of the state inheritance tax; and (2) that the basis for fixing the value of the real estate and improvements thereon was, for inheritance tax purposes, the assessed valuation, and not the appraised value.
After the cause had been argued and submitted, but before a decision was rendered thereon, the legislature, *Page 607 
on March 25, 1935, passed chapter 180, Laws of 1935, p. 707, Rem. 1935 Sup., § 8370-1 et seq., which materially changed the existing inheritance tax law in several respects. Being advised of the passage of the 1935 act, this court called for a re-argument of the case. The purpose of the re-argument and reconsideration was to determine what effect, if any, the 1935 act had upon the amount of inheritance tax to be paid in the instant case.
[1] The question of the effect of the 1935 act upon the inheritance tax law as it existed prior to that time was presented in In re Fotheringham's Estate, ante p. 579,49 P.2d 480. In that case, we held, with reference to the inheritance tax provisions of the 1935 act, that § 124, p. 791 (Rem. 1935 Sup., § 11211-e), dealing with the retroactivity of the act, was valid, and that, with the exception of § 115, p. 784 (Rem. 1935 Sup., § 11211-b), the act applied to all cases pending on March 25, 1935, in the inheritance tax and escheat division or in any of the courts of this state, whether on appeal or otherwise at that time, and whether the death of the decedent occurred prior or subsequent to the passage of the act.
That decision disposes of the state's second assignment of error made in its original argument herein. Although the court may originally have been in error in determining the basis upon which the inheritance tax was to be computed, that error has been rectified by the change in the law. The assessed value of real estate, as prescribed in Rem. Rev. Stat., § 11211-a, [P.C. § 7062-1], no longer serves as the basis for computing any part of the inheritance tax, except in those cases wherein the parties concerned avail themselves of the option given them by § 124 of the 1935 act to pay the tax under the former law. The market value of the property, whether real or personal, as defined *Page 608 
in the 1935 statute, and as finally determined, now controls, subject to the exception just noted.
[2] This, then, leaves for disposition the question raised in the appellant's first assignment of error, namely, whether the market value as fixed by the appraisement is absolute, or whether it is affected by, and subject to, an increase in valuation made under the Federal estate tax law, and consented to by the executrix.
The Fotheringham case did not pass upon that question, because the question was not there involved. But the rules announced in that case apply with equally governing force to this case upon the question now under consideration.
Rem. Rev. Stat., § 11202-b [P.C. § 7052-2], which was enacted in 1931 and which was not affected by the 1935 act, provides:
"The executor or administrator of every decedent whose estate may be subject to the federal estate tax or to the inheritance tax laws of the State of Washington, shall file in the office of the supervisor of the inheritance tax and escheat division within twelve months after the death of such decedent, one copy of the federal estate tax return and inventory provided for in the federal estate tax act, and in like manner, one copy of all supplemental or amended returns and inventories filed with the federal government."
It may be conceded that this section, considered alone and of itself, would not operate to increase the valuations as determined by the appraisement. So far as this case is concerned, it may also be conceded that even the consent of an estate to an increase of valuations for Federal estate tax purposes would not, of itself, operate to increase the valuations for state inheritance tax purposes. But § 107(1) of the 1935 act, p. 776, *Page 609 
contains a specific direction upon the subject. That section reads as follows:
"If after the values have been determined under the state statute for inheritance tax purposes, the same estate is valued under the Federal estate tax statute and the value of the property, or any portion thereof, fixed under the Federal law, is increased above the value fixed under the state statute as provided in section 11202-b, and this valuation under the Federal estate tax is accepted by the estate either by agreement or through final determination in the Federal court, then in that event, the value as fixed under the state statute upon such property or portion thereof shall be increased to this amount for state inheritance tax purposes." Rem. 1935 Sup., § 11202-1(l).
The language of this latter section is plain, explicit and unambiguous. It is evident that the legislature thereby intended to, and did, fix a standard or basis according to, and upon which, inheritance taxes due the state, in estates that were also subject to Federal estate taxes, should, under the contingency specified therein, be computed and paid. In such estates, the amount to be paid is not governed entirely by the market value as determined by the appraisers in the state court, but by the amount to which their valuation is raised, if it is raised, by the Federal government, either through agreement with the representatives of the estate or through a determination by the Federal court.
That the legislature had the right to fix such a standard is beyond question. The state's power over property passing by will or through the statutes of descent and distribution is plenary. It may take all of the estate if it sees fit, and if it may take all, it may take any part less than all. The state's right to direct its disposition is unlimited. In re Ferrel's Estate,112 Wn. 231, 192 P. 10; In re Sherwood's Estate, 122 Wn. 648,211 P. 734; United States v. Perkins, *Page 610 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287; Magoun v. Illinois Trust Savings Bank, 170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037;Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998.
In determining how much it shall take, the state may prescribe its own standards or bases of computation. One reason, at least, for the adoption of § 107(1), above quoted, is that in many cases the state is thereby enabled to realize to its full extent the credit allowed it by the Federal government for estate taxes paid the latter from local estates. Chapter 27, § 300-b, Public Laws of the United States, approved February 26, 1926 (Title 26, § 1093, U.S.C.A.), provides that the estate tax thereby imposed shall be credited with the amount of any estate, inheritance, legacy or succession tax paid to any state, to the extent of eighty per cent of the Federal estate tax, such credit, however, to include only such taxes as have actually been paid the state. Under this statute, there might be instances where the credit allowed by the Federal government would be greater than the amount of the inheritance tax imposed by the state. In such cases, the state would lose a portion of the allowable credit, and the estate itself would get no benefit from the state's loss. Section 107(1) acts as a remedy to that situation.
It may be true that, wholly aside from that consideration, the effect of § 107(1) is to increase the amount of the state tax, as the result of raising the valuation fixed by state appraisers to the valuation fixed in the Federal proceedings. But that is merely an incident to the right of the state to fix and adopt any basis for computation of inheritance taxes that it sees fit. The state has the right to avail itself of the increased valuation fixed under the Federal estate statute if such valuation is "accepted by the estate either by agreement or through final determination in the Federal *Page 611 
court." This right relates to all pending estates as prescribed by § 124 of the 1935 act.
The decree of the court will be reversed, and the cause remanded with direction to the court to proceed in accordance with the views herein expressed.
ALL CONCUR.