# IN THE MATTER OF THE ESTATE OF EATON HARRY MAGOON, also known as E. H. MAGOON, Deceased

NO. 5940

SEPTEMBER 14, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND CIRCUIT JUDGE SHINTAKU IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY RICHARDSON, C.J.

The executrix of the estate of Eaton Harry Magoon appeals from a final order of a circuit judge at chambers in probate in favor of the appellee, the Hawaii director of taxation (hereafter the director). In the order the trial court ruled that the director's redetermination of the values of certain shares of stock and the taxes thereupon is proper and valid,

and dismissed with prejudice the executrix's application for the determination of the values of the shares for Hawaii inheritance tax purposes. The primary issue before this court concerns the values of the shares upon which the inheritance taxes should be computed.

The executrix filed the Hawaii inheritance tax return with the director on December 17, 1971. As part of the gross estate she reported the following:

|  | Value/Share | Total Value |
|---|---|---|
| 861 shares common stock ............................. Magoon Estate Ltd. | $200 | $172,200 |
| 1,361 shares 6% preferred stock ........................ Magoon Estate Ltd. | 60 | 81,660 |
| 594 shares common stock ............................. Magoon Brothers | 600 | 356,400 |
| Total ........................................................................ | | $610,260 |

On its own motion pursuant to HRS § 236-25 (1968),[1] the trial court appointed Harry Hanson to appraise the shares.

The director computed the net taxable estate after allowing deductions including a deduction of $104,833.15 for federal estate taxes. He assessed an inheritance tax which the executrix paid on January 17, 1972.

Hanson filed his appraiser's report with the clerk of the court on July 28, 1972. The values he ascribed to the shares were identical to the values reported in the inheritance tax return.

The district director of the Internal Revenue Service (hereafter district director) disagreed with the federal estate tax return filed by the executrix. As a result of negotiations,

---

[1] The statute was insignificantly amended after Magoon's death. On the date of his death it read in part as follows:

§ 236-25 Appraisers, penalty for taking award. When the value of any inheritance, devise, bequest, or other interest subject to the payment of the tax is uncertain, the circuit judge before whom the probate proceedings are pending, on the application of any interested party, or upon his own motion, may appoint some competent person or persons as appraisers, if such appointment seems to the circuit judge to be necessary.

the executrix and the district director entered into a compromise agreement which decreased the marital deduction and increased the values of the shares. Accordingly, the federal estate tax increased from $104,833.15 to $137,399.59, a difference of $32,566.44.

The executrix submitted on inheritance tax refund claim for $2,310.65 to the director. The claim was based on the entitlement to a federal estate tax deduction increase of $32,566.44. To substantiate the claim, she enclosed the I.R.S. examination report that revealed not only the increased federal estate tax but also the increased values of the shares as follows:

| | Value/Share As Filed | Value/Share Increased To | Total Value As Filed | Total Value Increased To |
|---|---|---|---|---|
| 861 shares common stock Magoon Estate Ltd. | $200 | $230 | $172,200.00 | $198,030.00 |
| 1,361 shares 6% preferred stock ............... Magoon Estate Ltd. | 60 | 70 | 81,660.00 | 95,270.00 |
| 594 shares common stock Magoon Brothers | 600 | 700 | 356,400.00 | 415,800.00 |
| Totals ............... | | | $610,260.00 | $709,100.00 |
| Increase in Valuation ....... | | | 98,840.00 | |
| | | | $709,100.00 | $709,100.00 |

Subsequently, the director increased the federal estate tax deduction by $32,566.44 but redetermined the values of the shares to be the increased values in the I.R.S. examination report and accordingly increased the net taxable estate by $98,840.00. Rather than give the refund sought, he assessed an additional inheritance tax of $4,267.58.

The executrix disputed the director's redetermined values of the shares and filed the application mentioned at the beginning of this opinion. At the outset of the proceedings, the executrix informed the trial court that she relies on the appraiser's report. During the proceedings the director failed to offer any evidence.

The executrix contended that the issue is what are the market values of the shares as of the date of Magoon's death.

She contended that HRS § 236-28 (1968)[2] sets forth the procedure for determining the market values of the shares. She contended that since she relies on the appraiser's report, pursuant to section 236-28 the trial court is required to presume that the appraiser's reported values are correct. She further contended that since the director has failed to offer evidence rebutting the presumption, the trial court is required to determine that the market values of the shares are those reported by the appraiser.

The trial court disagreed with the executrix's contentions. It concluded that the issue is "whether the market value fixed by the appraiser is absolute or whether it is affected by, and subject to, an increase in valuation made under federal estate tax laws and consented to by the Executrix. See *In Re Ward's Estate,* 49 P.2d 485 (Wash. 1935)."[3] It ruled in favor of the

---

[2] The statute was insignificantly amended after Magoon's death. On the date of his death it read as follows:

§ 236-28 Jurisdiction of circuit judge. The circuit judge at chambers, having jurisdiction of the decedent's estate in the State, shall have jurisdiction to hear and determine all questions in relation to the tax arising under this chapter.

On the application of the executor or administrator, the director of taxation or any interested party, or upon his own motion, and after due notice of the hearing thereon, to the director, to the executor or administrator, and to such other persons as the circuit judge shall order, in such manner as the judge shall direct, the judge shall by order assess and fix the value of any inheritance, devise, bequest, or other interest, and the tax to which the same is liable, whenever such value or tax is in dispute; provided that the entry of such order shall be without prejudice to further determinations of tax by the director or the circuit judge, with respect to any property not included in the computations of values and amounts of taxes made by such order. Upon like application and notice, either as a part of the proceeding for determination of net values and taxes, or in a separate proceeding, the judge shall hear and determine any objection to the appraisers' report. In any proceeding provided for by this section or section 236-38, the appraisers' report as to the gross values of the properties involved shall, if any party to the proceeding relies on the report, be presumed correct, and the director's determination as to the net values of the interests taxed, and the tax thereon, shall, except to the extent in conflict with the appraisers' report, be presumed correct; in any such instance the burden of proof shall be upon the person objecting to such report or determination. This paragraph shall be deemed to be without prejudice to the generality of the first paragraph of this section.

Hereafter we will refer to this version of the statute.

[3] The executrix never contended that the market value fixed by the appraiser is absolute.

director premising its ruling on the following conclusions of law:

> [B]y insertion of the provision allowing the director of taxation to redetermine the value of the estate and the taxes thereon,[4] the legislature has thereby prescribed a standard according to which inheritance taxes shall be determined for estates that are also subject to the federal estate tax law. In such estates, the amount of taxes to be paid is not governed entirely by the market value as determined by the appraiser but may be determined by the amount to which this valuation is raised by the federal government. See *In re Ward's Estate,* supra; *Succession of Christina* [sic], 299 So. 2d 422 (La. 1974).
>
> . . . .
>
> . . . [T]he Director properly redetermined the valuation of the stocks and properly recomputed the inheritance taxes based upon the revised higher valuation. (Footnote added.)

---

[4] The provision referred to is in HRS § 236-27 (1968) which reads as follows:

§ 236-27 Returns; department's determination. The executor or administrator of the decedent's estate shall file a return in such form as the department of taxation shall prescribe showing all property known to him, the transfer of which is subject to tax under this chapter, whether or not the executor or administrator has such property in charge, with the deductions and exemptions applicable thereto, and such other information as the department may require. The department shall audit such return and shall have all of the powers granted to it for the making of audits and the determination of the correct amount of taxes, including, without prejudice to the generality of the foregoing, the power to examine, and require the production of, all account books, bank books, bank statements, records, vouchers, and other documents, and evidences relevant to the determination of the tax under this chapter. *From such return, and from the best information available, the department shall make its determination of the values of all inheritances, devises, bequests, or other interests, and the taxes to which the same are liable;* and the department shall, by mail or otherwise, give notice thereof to the executor or administrator, and to any interested person who has filed a request for such notice with the department. *Prior to the giving of the final receipt provided for by section 236-31, or the entry of the order provided for in section 236-28, as the case may be, the department may redetermine such values and amounts of taxes.* Nothing in this section shall be deemed to impose any tax liability on the executor or administrator, other than as set forth in other provisions of this chapter. (Emphasis added.)

The executrix contends and we agree that the ruling of the trial court is erroneous because it is premised on erroneous conclusions of law.

The court's first conclusion is erroneous because it contains a non sequitur. The prescription of a standard for determining the tax does not follow from the prescription of the director's authority to redetermine the value of the estate and the taxes thereon.

In the court's second conclusion it seems to conclude that pursuant to section 236-27 the standard upon which the tax should be computed is the difference between the higher federal estate tax value and the appraiser's value, but the cases it cited and its other conclusions indicate that it intended to conclude that pursuant to section 236-27 a standard upon which the tax should be computed is the higher federal estate tax value. The court's intended conclusion is erroneous because it is premised on its first conclusion and because the only standard upon which the tax should be computed is the market value, *see* HRS § 236-2 (1968); HRS § 236-5 (1968), as of the date of the decedent's death, *see* HRS § 236-26 (1968), of the property which passes or is transferred to a beneficiary as provided in HRS § 236-2, *see* HRS § 236-2; HRS § 236-5.

The trial court cited *Ward* and *Cristina* in support of its second conclusion. We are concerned with the interpretation of section 236-27. In a dispute similar to the one before this court, the *Ward* Court held in favor of the Washington supervisor of inheritance tax and escheat division stating that:

[E]ven the consent of an estate to an increase of valuations for federal estate tax purposes would not, of itself, operate to increase the valuations for state inheritance tax purposes. But section 107 (1) of the 1935 act contains a specific direction upon the subject. That section reads as follows: "If after the values have been determined under the state statute for inheritance tax purposes, the same estate is valued under the Federal estate tax statute and the value of the property, or any portion thereof, fixed under the Federal law, is increased above the value fixed under the state statute as provided in section 11202-b,

and this valuation under the Federal estate tax is accepted by the estate either by agreement or through final determination in the Federal court, then in that event, the value as fixed under the state statute upon such property or portion thereof shall be increased to this amount for state inheritance tax purposes." Rem. 1935 Supp., § 11202-1 (*l*).

The language of this latter section is plain, explicit, and unambiguous. It is evident that the Legislature thereby intended to, and did, fix a standard or basis according to, and upon, which inheritance taxes due the state, in estates that were also subject to federal estate taxes, should, under the contingency specified therein, be computed and paid. In such estates the amount to be paid is not governed entirely by the market value as determined by the appraisers in the state court, but by the amount to which their valuation is raised, if it is raised, by the federal government, either through agreement with the representatives of the estate or through a determination by the federal court.

183 Wash. at 608-09, 49 P.2d at 487. The language of section 236-27 differs entirely from the language of the statute interpreted in *Ward;* therefore *Ward* is entirely irrelevant. *See Keller v. Thomspon,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975). In another dispute similar to the one before this court, the court in *Cristina* held in favor of the Louisiana inheritance tax collector; but in discussing the similar dispute that court never interpreted any statute, much less one similar to section 236-27. We are unpersuaded that *Cristina* supports the trial court's second conclusion.

The trial court's final conclusion in erroneous because it is premised on its second conclusion.

We reverse the order of the trial court. We need not consider the executrix's remaining point, but she contends that we should remand the case with directions to the trial court to enter an order in her favor. In effect she contends that we should render final judgment on reversal. *See Dress Mfg. Co. v. Cadinha,* 33 Haw. 456, 483 (1935).

We have the power to render final judgment on reversal,

*see* HRS § 641-2 (Supp. 1975); and "[w]here the result, were we to remand, is foreordained from the record, we should exercise this power to dispose of the case without further proceedings." *Harlow v. Carleson,* 16 Cal.3d 731, 739, 548 P.2d 698, 703, 129 Cal. Rptr. 298, 303 (1976). We turn to the question of whether the result would be foreordained on remand.

Before discussing the hypothetical proceedings on remand, we note that the market value upon which the tax should be computed is the market value as of the date of the decedent's death of the property which passes or is transferred which, in turn, is the gross market value of the property as of the date of the decedent's death less the deductions allocable to the property. The appraiser's reported values of the shares are supposed to be the gross market values as of the date of Magoon's death. "All property, the transfer of which is subject to tax . . . shall be appraised at its full cash value as of the date of death." HRS § 236-26. Full cash value is synonymous with market value. *See, e.g., In re Taxes of Bishop Estate,* 33 Haw. 149, 152 (1934). The appraiser does not determine the deductions allocable to the property. The federal estate tax values of the shares are supposed to be the gross market values as of the date of Magoon's death. "The value of every item of property includible in a decedent's gross estate under . . . [the federal estate tax laws] is its fair market value at the time of the decedent's death, except . . . if the executor elects the alternate valuation method . . . ." Treas. Reg. § 20.2031-1(b) (1959). The executrix did not elect the alternate valuation method. Since there are no deductions allocable to the shares, the appraiser's reported values and the federal estate tax values are supposed to be the market values upon which the tax should be computed. (Hereafter we will refer to the market values upon which the tax should be computed as the market values.)

On remand the issue would be whether the market values of the shares are the appraiser's reported values as would be contended by the executrix or the federal estate tax values as would be contended by the director.

The procedure for determining which of these values are

the market values of the shares is set forth in section 236-28. Since the executrix filed an application for the determination of the market values and the market values are in dispute, the trial court would be required to conduct a hearing thereon and assess and fix the market values of the shares and the taxes to which the same are liable. Since the director is objecting to the court-appointed appraiser's report,[5] as part of the proceedings, the court would be required to hear and determine this objection. Since the executrix relies on the appraiser's report and the director's redetermined values conflict with the appraiser's reported values, the court would be required to presume that the appraiser's reported values are correct, *i.e.,* the market values, and would be required to place the burden of proving the contention that they are incorrect on the director. The record reveals that the only evidence the director could offer as proof of his contention is evidence of the federal estate tax values.

The executrix contends that if the director had offered such evidence as proof of his contention, the evidence would have been inadmissible. In support of his contention, she argues that the federal values were agreed to in the compromise between herself and the district director. The director concedes that these values resulted from the compromise. She further argues that if the director had offered evidence of the compromised values as proof of his contention, such evidence would have been irrelevant and privileged.

The trial court never ruled on the issue of the admissibility of evidence of the federal values.

Thus, ordinarily the issue would be remanded to the trial court for its resolution especially if in such determination factual issues are involved. Here no factual questions are involved; and inasmuch as it is a question of law which must ultimately be decided by this court, we believe that

---

[5] The director contends that he has never objected to the appraiser's report. Although the director has never formally objected to the report, we believe that he is objecting to the report within the meaning of the section. He asserts values of the shares different from those reported by the appraiser. He cannot successfully claim that he has never objected to the appraiser's report by merely having avoided to state "I object to the appraiser's report."

in the furtherance of justice, the issue should be determined by this court without remand.

*Gregg Kendall & Assoc., Inc. v. Kauhi,* 53 Haw. 88, 94, 488 P.2d 136, 141 (1971).

If the director offers evidence of the federal values (compromised values) of the shares as proof of his contention, the evidence would be inadmissible because it would be irrelevant and privileged. We have stated that " '[t]he compromise of a suit neither admits the validity of the claim urged, nor ascertains any amount as being due, and amounts to no more than saying that so much is paid to be rid of the controversy.' 12 C.J. 339." *First Bank of Hilo v. Maguire,* 25 Haw. 43, 49 (1919). Analogously, the compromise on the values of the shares is neither an admission by the executrix nor the district director that the compromised values are the market values. It amounts to no more than saying that these values are agreed upon to be rid of the controversy. Additionally,

> [i]t is well settled, as a matter of sound policy, that the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial of another law suit by another person asserting a claim related to the controversy settled.

*Grady v. de Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir. 1969) (footnote omitted); *see* McCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE 664 (2d ed. 1972).

The result would be foreordained on remand. The only evidence the director could offer as proof of his contention would be inadmissible. Irrespective of his burden of proof, he would be unable to rebut the presumption of the correctness of the appraiser's reported values; therefore the trial court would be required to assess and fix the market values of the shares as the appraiser's reported values and accordingly assess and fix the taxes to which the same are liable. *See* IX J. WIGMORE, EVIDENCE § 2491 (3d ed. 1940); McCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE, *supra* at 803.

We remand the case with directions to the trial court to

enter an order in favor of the executrix consistent with this opinion.

Reversed and remanded with directions to enter an order in favor of the executrix.

*Conrad M. Weiser (Goodsill Anderson & Quinn* of counsel) for Executrix-Appellant.

*T. Bruce Honda,* Deputy Attorney General, for Director of Taxation-Appellee.