10

[No. 45598. En Banc. April 5, 1979.]

*In the Matter of the Estate of*
CHESTER CANNING.

*Slade Gorton, Attorney General,* and *William B. Collins* and *L. E. Dreisbach, Assistants,* for appellant.

*Joseph J. Roller,* for respondent.

HICKS, J.—This appeal by the State of Washington Department of Revenue (Department) certified to this court by the Court of Appeals, Division Two, arises from the probate of the estate of Chester Canning in Pierce County Superior Court. The case presents a somewhat unique procedural and factual situation. It raises issues concerning the Washington inheritance tax laws, RCW Title 83.

Chester Canning died testate in Pierce County on March 13, 1976. He bequeathed his entire estate to his friends, Bennie and Rose Marie Walth.[1] Canning's nonintervention will was admitted to probate and Rose Marie Walth was confirmed as executrix on March 17, 1976. She inventoried the estate pursuant to the probate procedures set forth in RCW 11.44. In the course of her duties, Mrs. Walth filed a federal estate tax return (Form 706) and paid a federal tax of $4,742.52. The Internal Revenue Service (IRS) subsequently issued its federal estate tax closing letter.

As required by RCW 83.40.020, Mrs. Walth filed a copy of the federal estate tax return and closing letter with the Department. Schedule G of the federal estate tax return set forth a transaction involving the decedent and the executrix and her husband, which occurred within 2 years of the date of Chester Canning's death. In August 1974, Canning had cancelled a note and satisfied the mortgage which he held on the Walths' duplex home. At the time of the mortgage satisfaction, the underlying indebtedness was $20,951.75, as evidenced by the unpaid balance of the note.

As reported in Schedule G, the executrix regarded the transaction as an offset or repayment to the Walths for custodial care provided to Canning for a period of over 3 years prior to his death:

Value of Note . . . discharged and mortgage satisfied $20,951.75. Note was cancelled to repay mortgage owers for custodial care, food and lodging, provided to decedent

---

[1]Following the death of her husband, Mrs. Walth is now the sole beneficiary under Chester Canning's will.

from the year 1971 through 1975 in part. The above transaction is reported only for the purposes of clarifying the record.

The value of the transfer was recorded as "none" on Schedule G.

In fixing the taxable value of the estate for state inheritance tax purposes, the executrix relied upon RCW 83.40-.040, the federal adjustment statute. She calculated the tax due the State to be $20,670.17, tendered this amount to the Department and requested a certificate of release from the inheritance tax lien. The Department declined to issue the release. In letters to the executrix' attorney, the Department sought additional information regarding the satisfaction of mortgage indebtedness and the claimed executrix fee. The information was not furnished.

Pursuant to RCW 11.76.040, notice was given by publication that a final accounting in the Canning estate would be presented for approval to the probate department of the Superior Court. Despite correspondence from Department indicating an obvious concern in the matter, it was not given specific notice of the hearing and it made no appearance.

On March 10, 1977, the Honorable Horace Geer signed a decree approving the final accounting which resolved both issues raised in the Department's letters without state input. Finding of fact No. 7, in effect a conclusion of law, stated that "under RCW 83.40.040 the Internal Revenue Service of the U.S. Government's appraisal of the estate is controlling upon the State of Washington Department of Revenue." The decree directed payment of a creditor's claim, authorized the executrix to reimburse herself for funeral expenses, directed payment of an attorney's fee plus advanced costs, and ordered disbursement of $5,500 to the executrix "as a reasonable fee."

The findings, conclusions and decree were forwarded to the inheritance tax division of the Department. It responded immediately by moving to vacate the decree on the ground that as a necessary party, it was entitled to

direct notice of the pendency of the proceedings which it had not received. On April 15, 1977, this motion was heard by the Honorable Robert Jacques, and the court reopened the matter for submission of briefs. In June, the court authorized the Department to take the deposition of the executrix pursuant to the rules of discovery. The deposition was taken August 18, 1977.

The Department did not rely solely upon its motion to vacate Judge Geer's decree approving the final accounting. As stated in its brief:

> Once the Department had slowed the estate down by means of its Motion to Vacate, and taken a deposition it filed its Findings in the regular manner pursuant to RCW 83.28.050, including the transfer in contemplation of death and tentatively eliminating the executrix's fee.

In September 1977, the Department filed its findings pursuant to the statutory procedures for fixing the inheritance tax which are set forth in RCW 83.28. The executrix had previously determined the net taxable value of the estate to be $111,994.12. The Department calculated the net taxable estate to be $126,132.44. The Department's findings purported to tax the mortgage satisfaction as a gift in contemplation of death, taxable under RCW 83.04-.010(2). No deduction was allowed for the executrix fee which had been fixed by the probate court. After crediting the $20,670.17 previously paid by the estate for inheritance taxes, the Department declared $6,612.94 plus interest to be due.

The executrix filed objections to the Department's findings as contemplated under RCW 83.28.060. A hearing on the objections was held in Superior Court on October 21, 1977, at which time the trial court indicated it would rule in favor of the estate.[2] The court's order confirmed the probate department's original order approving the final

---

[2]The Department is protected against operation of a decree of final accounting under RCW 83.44.110 in that no decree of final distribution may be entered unless there is an inheritance tax release, receipt, waiver or acknowledgment on file, or a court having jurisdiction has determined that there is no tax liability. In

accounting and decreed the amount of inheritance tax to be $20,670.17, the amount previously tendered by the estate. Although the order did not explicitly decree that RCW 83.40.040 foreclosed the Department from inquiring into the cancellation of the note and the satisfaction of the mortgage on the Walth duplex as a transfer in contemplation of death, such a finding is implicit in the court's ruling that "[t]he final accounting is accurate as to contents and appraisal and conforms with the audit of the Internal Revenue Service of the United States of America." The Department appealed.

The issues as certified to this court can be stated as follows: (1) Does RCW 83.04.013 allow a deduction for inheritance tax purposes of whatever fee the court approves at final accounting without an opportunity for the Department to question the reasonableness thereof? (2) When the federal government fails to include the value of an inter vivos transfer of property by the decedent as part of the taxable estate for federal estate tax purposes, does RCW 83.40.040 preclude the Department from including the asset in the estate for inheritance tax purposes?

Resolution of these issues requires an examination of the inheritance tax laws, RCW Title 83 and the probate statutes, RCW Title 11. Unfortunately, the procedures set forth in these statutes are not completely congruent. In the absence of legislative clarification, we must attempt to reconcile these independent statutory procedures.

I

Regarding the issue of the executrix fee, it is the Department's position that the State is not bound in the inheritance tax aspects of probate proceedings unless the State has made a specific appearance therein. We agree. *State ex rel. Pemberton v. United Pac. Cas. Ins. Co.*, 188 Wash. 304, 62 P.2d 729 (1936). In this instance, as noted above, the

the present case, the Department submitted to jurisdiction and Judge Jacques determined that no further tax was due and owing. However, we hold that determination was made upon erroneous statutory interpretation.

Department did not rely solely on its motion to vacate for lack of notice; it elected to participate by filing findings pursuant to RCW 83.28.030, which eliminated the executrix fee as a deduction. While the matter was heard upon objections by the executrix, the report of proceedings reveals little consideration or discussion of the fee issue.[3] Nevertheless, the court reaffirmed the earlier order of the probate department and found the Department's omission of the deduction for executrix fee to be erroneous.

■ The executrix argues that RCW 83.04.013, which delineates several deductions from the gross estate for inheritance tax purposes, specifically refers to a deduction for "reasonable" attorney fees, but omits this qualifier in reference to executor's fees. Thus, the executrix reasons that while the Department may be authorized to challenge the reasonableness of an attorney fee, it may not make an inquiry regarding the fee of an executor. We disagree. We do not believe the legislature intended, by the placement and proximity of statutory modifiers, to allow a deduction for an attorney's fee only if it is reasonable and, by implication, permit an unrestricted deduction of a fee for a personal representative regardless of its reasonableness.

The executrix also emphasizes that under RCW 11.48-.210, it is the function of the *court* to determine a "just and reasonable" amount of compensation for the services of the personal representative. Under the same statute it is also the court's function to establish a "just and reasonable" amount for an attorney's fee. If the determinations made under RCW 11.48.210 are final and binding upon the Department, as the executrix apparently asserts, then her proposed interpretation of RCW 83.04.013 is inconsistent insofar as it would permit the Department to inquire into

---

[3]An earlier order of Judge Jacques indicated that he considered this issue foreclosed under RCW 83.04.013; however, the statutory references are somewhat ambiguous:

> [T]he court further finding that under RCW 83.04.030 [*sic*] the fees of the executor are deductible from the inheritance tax regardless of whether or not they are reasonable . . .

the reasonableness of the one (attorney's fee), but not the other (executor's fee).

In any event, the Department does not dispute that it is the court that sets the fee of the personal representative. It does argue, however, that insofar as this fee is a deduction from the gross value of the estate under RCW 83.04.013, it affects the tax determination and the Department should be permitted to question the fee allowed. We agree.

As this case indicates, the interrelationship between the probate code and the procedures to fix the inheritance tax is somewhat ambiguous. Nevertheless, to adopt the executrix' position would be to subvert the specific inheritance tax procedures provided under RCW 83.28. We believe the Department is entitled at some point to inquire regarding the amount of fee awarded the executrix in relation to the duties she performed. In the August 1977 deposition, the Department attempted to question the executrix about the duties she performed as personal representative. She refused to answer questions in this subject matter area. The Department moved the trial court to require answers from the executrix to its questions and then rather than pursuing the motion, it brought RCW 83.28 proceedings.

Parenthetically, had the executrix given actual notice to the Department when the final accounting was first presented to the probate department, as we believe she should have, we would view this case in a different light. On the record before this court, however, the Department has not had the opportunity to question this fee. We believe it is entitled to do so; consequently, we remand for this purpose.

## II

The second issue involves interpretation of the federal adjustment statute, RCW 83.40.040. The statute provides:

If after the values have been determined under this title for inheritance tax purposes, the same estate is valued under the federal estate tax statute and the date of death value of the property, or any portion thereof, fixed under the federal law, is increased above or decreased below the value theretofore fixed under the inheritance

tax provisions of this title, and this valuation under the federal estate tax is accepted by the estate either by agreement or through final determination in the federal court, the value as fixed under the inheritance tax provisions of this title upon such property or portion thereof shall be increased or decreased to this amount.

The trial court found that this adjustment statute prevents the Department from claiming that the mortgage satisfaction was a transfer presumptively made in contemplation of death under RCW 83.04.050. We disagree. We hold that RCW 83.40.040 does not bind the State in the present instance.

The Department argues that the statute is controlling only in the following situations: (1) where the federal government increases or decreases a value *after* the Department makes its determination for inheritance tax purposes; and (2) where the issue concerns the *value* of an asset, not its *includability* in the estate. We believe that a fair interpretation of the statute, in light of its apparent purposes, supports the Department's position.

■ First, we address the import of the introductory clause, "If *after* the values have been determined *under this title* for inheritance tax purposes . . ." (Italics ours.) RCW 83.40.040. Arguably, the reference is to determinations made under RCW 83.28 of the inheritance tax title which delineates the "Procedure To Fix Tax on Estate." Under this procedure, the Department is granted broad investigatory powers to inquire into "any facts that will aid . . . in the determination of [the inheritance] tax . . ." RCW 83.28.010. *See also* RCW 83.28.020. Upon completion of its investigation, the Department is to file findings with the court. RCW 83.28.030. Any interested person may then file written objections and the controversy will be noted for trial. RCW 83.28.060. At the hearing on the matter, the Department's findings are to be "presumed correct." This presumption continues only until "the objector or objectors proceed in support of said objection or objections" with sufficient credible evidence to permit the court to find

otherwise.[4] RCW 83.28.070. Thereafter, the court shall make its determination based on the evidence and without regard to the presumption.

The Department asserts that the applicability of RCW 83.40.040 depends upon a specific sequential order of valuation determinations, *i.e.,* "after the values have been determined under this title . . ." which did not occur in the present case. As a practical matter, we note that the instant situation represents a departure from the normal sequence in that the federal estate tax determination was accelerated and completed *prior* to the State's determination for inheritance tax purposes.

In light of certain amendments to the probate code, which will be discussed below, the meaning of the condition attached to RCW 83.40.040 by its introductory clause is not as clear as the Department contends or as it might appear on its face. Nevertheless, we believe that under the circumstances of this case it is not incumbent upon the State under *this* statute to adopt the federal position nor is it foreclosed from further inquiry.

At the time the adjustment statute, RCW 83.40.040, was enacted as part of the Revenue Act of 1935, three court appointed appraisers initially established the value of property for inheritance tax purposes. Laws of 1935, ch. 180, § 113. A 1965 amendment to the probate code reduced the number of appraisers to one. Laws of 1965, ch. 145, § 11.44.055. At the same time, a statute was enacted which provides that the value of the estate, as determined under the *probate* law, shall be the value for inheritance tax purposes, except where the same estate is valued for federal

---

[4]In this instance, for example, the Department allows no deduction for the executrix fee. The presumed correctness of this determination continues only until Mrs. Walth submits credible evidence that she is the appointed executrix, that she served as such and that the estate is of substantial value. The responsibility alone of serving as executrix of a substantial estate qualifies for a fee, regardless of duties performed. The exact amount of the fee is within the sound discretion of the trial court after consideration of the probate record and evidence and arguments of the parties. RCW 11.48.210; *In re Perry's Estate,* 168 Wash. 428, 12 P.2d 595 (1932).

estate tax purposes and the valuation is adjusted in accordance with RCW 83.40.040. *See* RCW 11.44.061. The process of valuation under the current probate code, as amended in 1974, places the responsibility for determining the value of the estate upon the personal representative. RCW 11.44-.066.

Thus, an argument could be made that the condition set forth in the introductory clause of RCW 83.40.040 has been satisfied in this instance in that the personal representative has valued the estate under the probate law, therefore, under RCW 11.44.061 this value suffices for inheritance tax purposes absent the operation of RCW 83.40.040. Such an interpretation, however, does not harmonize with RCW 83.28 and we do not believe the legislature intended such a result. We hold that the inventory and valuation made by the personal representative under RCW 11.44.066 is the initial determination, subject to challenge by the Department under RCW 83.28 and subject to final determination by the court.

The second argument advanced by the Department is that the present controversy involves a question of includability of an asset in the estate inventory, not its value. There is no dispute, the Department contends, that at the time the mortgage was satisfied, the underlying indebtedness amounted to $20,951.75. Therefore, the Department argues that RCW 83.40.040 is not applicable and it is not foreclosed from challenging the exclusion of the item from the inventory.

At the time the adjustment statute was originally enacted as part of the Revenue Act of 1935, it required adjustments only when the federal valuation exceeded the state's valuation. Laws of 1935, ch. 180, § 107(1), p. 776. *See In re Ward's Estate*, 183 Wash. 604, 49 P.2d 485, 102 A.L.R. 496 (1935). Thus, under the statute the State could take advantage of higher property valuations fixed by federal auditors by adjusting the state valuation upward. In 1963, the statute was amended to provide for adjustments downward as well as upward. Laws of 1963, 1st Ex. Sess., ch. 28,

§ 12. Whatever the reason for the amendments, the statute now binds the State to federal *valuations* in those cases requiring a federal estate tax and approval by the IRS.

Except as the court may find an offset for the value of the care furnished by the Walths to Canning, we do not believe that there is any dispute as to the value of the property transferred in the present case. That value is the amount of indebtedness at the time of the cancellation of the note and satisfaction of the mortgage, $20,951.75. Nor do we believe that the approval by the IRS of Form 706, which included the executrix' narrative explanation of the mortgage satisfaction on Schedule G and the notation of "none" under the column denominated as "value at date of death", was a valuation determination of the Schedule G transaction on the part of the IRS. It may indicate acceptance of the contention that the transfer was not one made in contemplation of death, but that is a determination as to includability, not value. 26 U.S.C. § 2036(b) (1976). That the executrix herself so believed may be inferred from her notation on Schedule G, "The above transaction is reported only for purposes of clarifying the record."

We are informed that occasionally, following negotiation with the IRS, property reported in Schedule G of the federal estate tax return may result in a compromised value, rather than its apparent or alleged worth. For example, the values ultimately assigned may vary from 10 percent to 90 percent of what originally appeared to be the value of the property at the time of the transaction as claimed by the government. The instant case does not represent such a situation. The transaction was reported by the executrix for purposes of "clarifying the record" only; no valuation assignment was made. Had some value been assigned by the IRS to the Schedule G item, RCW 83.40.040 would apply in accordance with its terms. The federal government's determination as to includability, *i.e.,* whether the transfer was in contemplation of death does not preclude the State from inquiring into the matter in this instance. We hold that RCW 83.40.040 is inapplicable in this case.

Accordingly, we reverse the trial court and remand for further proceedings consistent with this opinion.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.