DAVID M. SAPP, et al., Plaintiff-Appellants, Cross-Appellees, *v.* WILLARD M. P. WONG, et al., Defendants-Appellees, Cross-Appellants, and H. T. WONG, et al., Intervenors

NO. 6597

MARCH 31, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY OGATA, J.

Plaintiffs-appellants, cross-appellees, David M. Sapp, Phillip Gillin, Etta Palin, Gene Neste, Nello Neste, Ephraim P. Kranitz, S. Gerald Stone, Julian Weinstein, James Melvin, John J. Rogers, Nathan E. Gillin, S. Dell Scott, Jerry Tennant, Joel Coleman, Neil Stein, Kenneth D. Belgum, Jack Wormser,[1] and H. B. Rothbard[2] (who will hereinafter be referred to as "appellants") appeal from a judgment entered against them and in favor of defendants-appellees, cross-appellants, Willard Wong, Mary Wong and Howard Wong (who will hereinafter be referred to as "appellees"). Appellees have cross-appealed from the trial court's judgment which denied their attorney's fees and other costs and also damages resulting from the filing of lis pendens. On the appeal, we reverse, vacate the judgment and remand for a new trial; we dismiss the cross-appeal.

In May 1973, the United States District Court for the District of Hawaii rendered a class action judgment in favor of appellants and others similarly situated who were, on November 22, 1968, stockholders of Hawaii Pacific Venture Capital Corporation, formerly known as Hawaii Jet Aire, also known as Air Hawaii, Inc., a Hawaii corporation, and against

---

[1] This is a class action suit, and the individually named plaintiffs represent not only themselves but also other stockholders of Hawaii Pacific Venture Capital Corporation, formerly known as Hawaii Jet Aire, also known as Air Hawaii, Inc., as of November 22, 1968, similarly situated, who did not opt to be excluded from the class. Although it is not clear from the record, definitely not included in the class are H. T. Wong, James Morikawa, and L. W. Carmody, the intervenors in the court below, and appellee Willard M. P. Wong.

[2] Appellant Rothbard was designated as appellant because of his separate notice of appeal which he filed. He did not join with the other appellants in the amended complaint or in their notice of appeal to this court. No issue was raised as to his status in this appeal.

one of the appellees, Willard Wong, in the amount of $647,508. In November 1973, a writ of execution in the federal case for satisfaction of judgment was returned nulla bona by the United States marshal. Appellants then filed suits in federal court and in the court below against Willard Wong, his wife, Mary Wong, and his brother, Howard Wong, to obtain a declaration by the respective courts that appellees Mary and Howard Wong are constructive or resulting trustees of appellee Willard Wong's interest in certain lands situated in Honolulu, and that appellee Mary Wong is liable to appellants as a partner of appellee Willard Wong because of her active participation in the conspiracy and scheme to defraud these appellants.

Trial began in the court below on March 17, 1977. As of that date, the subpoenas duces tecum, issued to each of the three appellees on the morning of March 16, 1977,[3] were still outstanding. Appellees were not present in the courtroom and were not available to testify. Appellants' position was and has been that they could not proceed with their case without the appellees. Appellants' attorney, Mr. Saunders, requested the trial judge to

> inquire of Mr. Weisman [appellees' attorney] what if any discussions he's had with his clients about the propriety of their appearing today. . . . [and] as to the present whereabouts of these three parties. The problem being that as in the past, the sheriff has been unable to find them because they secrete themselves from service.

Appellants' attorneys, Mr. Saunders and Mr. Morse, repeated their request several times. Mr. Weisman refused to answer and stated that, "I think that I have an obligation not to disclose any discussions that I've had with the defendants, including their whereabouts. A short answer to it is I don't know where they are." The trial judge then asked Mr. Weisman how he intended to notify his clients to testify in their

---

[3] The record indicates that appellees were all residents of Honolulu and we take judicial notice that normally appellees could have been served with subpoenas as of the close of business on March 16, 1977. *Almeida v. Correa*, 51 Haw. 594, 465 P.2d 564 (1970).

own behalf if he had no knowledge of their whereabouts, and Mr. Weisman replied, "[t]hrough third parties who know where they are." Mr. Saunders then requested disclosure of the identities of the third parties or altering the sequence of the trial so that the appellees' counterclaim could be tried first and the appellees could be subpoenaed when they appeared in court. At this time, Mr. Weisman refused to make disclosure and explained:[4]

> Mr. Saunders has made the allegation that my clients have secreted themselves and that that is a crime. So he's now accused my clients of criminal conduct. He's done that both in court and in his pre-trial statement. He's accused them of obstructing justice.
>
> Now, for me to make disclosures of what my clients have told me would put me in a position of — if he's correct — and by no means I concede he's correct — but if he's correct, of making admissions of criminal liability for my clients, and that I certainly can't do.

The trial judge then asked, "What conduct on your part or what act on your part would amount to that?" and Mr. Weisman replied:

> I've got to be very careful of how I phrase it so that I don't make such admissions — but if I take the hypothetical case, if your Honor please. If my client told me, "You contact me through X," and if Mr. Saunders is correct that that amounts to obstruction of justice on the part of my client, then by revealing X's name, I would be revealing part of, in effect, be testifying against my client and establishing criminal claims that they allege. I don't concede that there's any such crime, but they have made the allegation. It's a very serious allegation.

The trial court accepted Mr. Weisman's denial of any knowledge as to his clients whereabouts and denied appellants'

---

[4] Although Mr. Weisman did not, in the court below, expressly invoke the attorney-client privilege, both parties have, in their briefs, characterized the denial of the disclosure of the requested information as based on that privilege and we treat it as such.

request to compel disclosure of the identities of the third parties through whom the Wongs could be contacted.

Mr. Mui, attorney for appellant Rothbard, moved for a continuance of the case so that the appellees could be subpoenaed. The trial court denied the motion.

The two questions we consider relevant in this appeal are:

1. Whether the trial court erroneously sustained the asserted attorney-client privilege and

2. Whether the trial court abused its discretion in denying a reasonable continuance?

We discuss the issues in turn.

I.

Is there a valid claim of the attorney-client privilege?

The attorney-client privilege authorizes a client to refuse to disclose and to prevent others from disclosing certain communications between attorney and client. To invoke the privilege, the party asserting it must establish that the communication occurred in the manner as follows:

(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 Wigmore, Evidence, § 2292 (McNaughton rev. 1961).

Because the privilege works to suppress otherwise relevant evidence, the limitations which restrict the scope of its operation, above summarized by Wigmore, must be assiduously heeded. *E. v. E.*, 76 Misc.2d 2, 349 N.Y.S.2d 623 (1973). An *ipse dixit* claim of privilege is insufficient. Proper practice requires preliminary judicial inquiry into the existence and validity of the privilege and the burden of establishing the privilege rests on the claimant. *United States v. Gurtner*, 474 F.2d 297 (9th Cir. 1973); *In re Bonanno*, 344 F.2d 830 (2nd Cir. 1965); *In re Kinoy*, 326 F.Supp. 400 (S.D.N.Y. 1970); *State v. Hanna*, 150 Conn. 457, 191 A.2d 124 (1963). Any other

rule would "foreclose meaningful inquiry into the existence of the relationship and any spurious claims could never be exposed." *In re Bonanno, supra,* 344 F.2d at 833. No questions were put to Mr. Weisman designed to provide the factual basis needed to determine if the privilege existed. The trial court attempted to do so but the record lacks the evidence needed to determine the existence of the privilege. Mr. Weisman continued to stand on the mistaken view that his being an attorney was enough to raise the privilege and failed to show any factual basis for the conclusion that the identities of the third parties or his clients' whereabouts stemmed from a privileged communication.

We, however, go farther than deciding that the proper determinations were not made. Under the circumstances of this case, neither the appellees' whereabouts or the identities of the third parties who knew of their whereabouts, fall within the ambit of the privilege and the ruling to the contrary was error.

A determination of whether a client's whereabouts is a privileged communication will depend on an analysis of the facts of the case and the nature of the communication involved. *In re Grand Jury Proceedings,* 517 F.2d 666 (5th Cir. 1975); *In re Stolar,* 397 F.Supp. 520 (S.D.N.Y. 1975). The rules for the privilege invite a court to weigh the competing policies of insuring the right of every person to freely confer and confide in a lawyer and of protecting the interests of a greater class of clients — the public — in the administration of justice. *In re Grand Jury Proceedings, supra,* 517 F.2d at 671-672; *United States v. Kovel,* 296 F.2d 918 (2nd Cir. 1961); *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960); *In re Stolar, supra,* 397 F.Supp. at 524. This is not a case in which the client's address or whereabouts was integrally related to the legal advice sought as it was in *In re Grand Jury Subpoenas Served Upon Field,* 408 F.Supp. 1169 (S.D.N.Y. 1976), where the client had consulted with his attorneys in connection with his desire to change his residence and the court held that his attorneys could not be compelled to disclose their client's whereabouts to the Grand Jury. Nor is this a domestic relations case in which a court might be motivated by a desire to

protect a child's or a spouse's interest and hence their address, from disclosure, as in *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 358 N.E.2d 521 (1976), and *McDonald v. Berry*, 243 S.C. 453, 134 S.E.2d 392 (1964). Here, appellants sufficiently demonstrated that there was a legitimate need for the court to require disclosure of the information sought. Under similar circumstances, where the client's address was sought in order to permit service of court orders, other courts have found that the privilege does not exist. *In re Jacqueline F.*, 94 Misc.2d 96, 404 N.Y.S.2d 790 (1978); *Jafarian-Kerman v. Jafarian-Kerman*, 424 S.W.3d 333 (Mo. App. 1967); *Falkenhainer v. Falkenhainer*, 198 Misc. 29, 97 N.Y.S.2d 467 (1950); *Markevich v. Royal Insurance Co.*, 147 N.Y.S. 1004 (App. Div. 1914). In many of the cases in which the balance was struck in favor of the privilege, the client was not a party to the action in which the information was sought or the attorney was not representing any of the parties in the action and the purpose in seeking the address was to enable service of process on the attorney's client. *Brooklyn Savings Bank v. Park Slope Realty Corporation*, 146 Misc. 4, 260 N.Y.S. 508 (1932); *Neugass v. Terminal Cab Corporation*, 139 Misc. 699, 249 N.Y.S. 631 (1931); *Hyman v. Corgil Realty Co.*, 164 App. Div. 140, 149 N.Y.S. 493 (1914). That is not the case here. Appellees were parties to the proceeding in which their whereabouts were sought and the attorney from whom the information was sought was representing them in the action. Had the requested information been disclosed, appellees would have been served with the subpoenas, their presence in court compelled and they would have been available as witnesses, thereby aiding the trial court in determining the merits of the case.

## II.

Did the trial court abuse its discretion in refusing to grant the request for a continuance?[5]

---

[5] In its Findings of Fact, Conclusions of Law, and Judgment, the lower court stated in its seventh "whereas" clause:

WHEREAS, the plaintiffs did not call any other witnesses but asked for a

A court has the discretion to grant or refuse a continuance of a proceeding in the orderly administration of justice. This discretion is a judicial one and is subject to review for abuse. *In re Adoption of Jane Doe*, 42 Haw. 250 (1957); *Irwin v. Lyman*, 29 Haw. 434 (1926); *Yamashiro v. Costa*, 26 Haw. 54 (1921). A wide variety of circumstances may arise which call for the exercise of judicial discretion in determining whether to grant or refuse a continuance.

Here, a continuance was requested because the appellees were not available to testify in a non-jury trial. Although appellants had issued three subpoenas duces tecum, one for each of the three appellees, with sufficient time for service, the subpoenas were returned unserved. The circumstances do not suggest that the appellants, movants for the continuance, merely sought general delay. Mr. Mui requested a continuance for the specific purpose of locating the appellees to serve them with subpoenas and compel their attendance in court. It further appears from the record that all parties had considered the appellees' testimonies indispensable to the case. *See Irwin v. Lyman supra*, 29 Haw. at 436-437. Moreover, under the circumstances, the granting of the continuance would not have been prejudicial to, or have inconvenienced the appellees and further the failure to do so was prejudicial to appellants as they did not have a reasonable opportunity to try their case upon its merits. "Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961). Thus we conclude that the trial court abused its discretion in its failure to grant a reasonable continuance. *Cf. State v. Valmoja*, 56 Haw. 452, 540 P.2d 63 (1975).

---

continuance of the case which was denied by the Court, and the plaintiffs represented by Mr. Morse rested their case; . . . .

42

### III.

The cross-appeal taken by appellees relates to so much of the "judgment . . . as it failed to award the Defendants costs, statutory attorney's commissions and damages for lis pendens." Appellees' contention before this court is much narrower. Their argument to us is that the trial court committed error when it ruled in its judgment that "all parties shall pay their own costs and attorney's fees." Their contention now is that they are entitled to attorney's fees under HRS § 607-14 (1976).[6] They have apparently abandoned any claim for costs and damages resulting from lis pendens.

However, in view of what we have said, we must reverse this case on appeal, vacate the judgment and remand for a new trial. Hence, appellants cannot at this time be considered to be the losing parties, even if we assume that appellants' amended complaint is an action in the nature of assumpsit. *Cf. Yoshida v. Nobrega,* 39 Haw. 254 (1952). As an aside, appellees are reminded that upon the filing of a notice of cross-appeal, rather than incorporating the alleged error from

---

[6] HRS § 607-14 (1976) reads as follows:

*Attorneys' fees in action in the nature of assumpsit.* In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

25 per cent on first $1,000 or fraction thereof.
20 per cent on second $1,000 or fraction thereof.
15 per cent on third $1,000 or fraction thereof.
10 per cent on fourth $1,000 or fraction thereof.
5 per cent on fifth $1,000 or fraction thereof.
2.5 per cent on any amount in excess of $5,000.

The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment. The fees provided for by this section shall not be taxed in any action where the plaintiff obtains a judgment which includes attorneys' fees upon a promissory note or other evidence of indebtedness, when the promissory note or other evidence of indebtedness contains a provision for the recovery of costs of collection or attorneys' fees.

which the cross-appeal was taken and their arguments thereon into their answering brief to appellants' opening brief, they should have filed an opening brief in compliance with Rule 3, Rules of the Supreme Court. Accordingly, the cross-appeal is therefore dismissed.

On the appeal, we reverse, vacate the judgment and dismiss the cross-appeal; and remand this cause for further proceedings consistent with this opinion.

*William W. Saunders & Jack C. Morse* for Plaintiffs-Appellants, Cross-Appellees, except for H. B. Rothbard.

*Thomas L. Mui* for Plaintiff-Appellant, Cross-Appellee H. B. Rothbard.

*Jerry A. Ruthruff (Brian D. Sugimoto* with him on the brief, *Chanin & Ruthruff* of counsel) for Defendants-Appellees, Cross-Appellants.