**Electronically Filed
Supreme Court
SCWC-11-0000342
08-JAN-2014
10:49 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

THEODORE K. BLAKE, Petitioner/Plaintiff-Appellant,

vs.

COUNTY OF KAUAʻI PLANNING COMMISSION; COUNTY OF KAUAʻI
PLANNING DEPARTMENT; IAN COSTA, in his official capacity as
Planning Director; DEPARTMENT OF LAND AND NATURAL RESOURCES;
WILLIAM J. AILA, JR., in his official capacity as chair of the
Department of Land and Natural Resources; and STACEY T.J.
WONG, as Successor Trustee of the Eric A. Knudsen Trust,
Respondents/Defendants-Appellees.

SCWC-11-0000342

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000342; CIV. NO. 09-1-0069)

JANUARY 8, 2014

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK JJ.;
WITH ACOBA, J., CONCURRING AND DISSENTING SEPARATELY

AMENDED OPINION OF THE COURT BY RECKTENWALD, C.J.

This case involves a challenge to the County of Kauaʻi

Planning Commission's approval of a subdivision application for

the Eric A. Knudsen Trust's development of land in Kōloa, Kauaʻi.

One of the challenged aspects of the proposed subdivision was the need for the Knudsen Trust to breach a historic road (Hapa Road) and its adjacent rock wall to provide access into the subdivision. During the Planning Commission's consideration of the Knudsen Trust's subdivision application, all the parties assumed that Hapa Road belonged to the County of Kauaʻi. The Planning Commission eventually approved the Knudsen Trust's subdivision application.

Theodore K. Blake filed a civil complaint asserting six claims against the Defendants,[1] including, inter alia, alleged failure of the Defendants to follow the proper environmental and historic review processes, violations of Native Hawaiian rights, and breaches of the public trust. Blake subsequently amended his complaint in part because he discovered that Hapa Road belonged to the State of Hawaiʻi and not the County. In his amended complaint, Blake also asserted two additional claims of negligence and public nuisance against the Knudsen Trust for allegedly breaching Hapa Road and its adjacent rock wall.

On a motion for summary judgment brought by the State Defendants, the circuit court determined that, because the State had not given its approval to breach Hapa Road, the issues raised

---

[1] State of Hawaiʻi Department of Land and Natural Resources (DLNR) chair William J. Aila, Jr., was automatically substituted as a respondent/ defendant-appellee in place of former DLNR chair Laura Thielen, who was sued in her official capacity. Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 43(c)(1) (2012). Thus, the respondents/defendants-appellees are the Planning Commission, County of Kauaʻi Planning Department, Ian Costa in his official capacity as planning director, DLNR, Aila in his official capacity as chair of the DLNR, and the Knudsen Trust (collectively, Defendants).

in Blake's complaint were not ripe, and therefore dismissed the claims for lack of subject matter jurisdiction.[2]  The circuit court also indicated that even though Blake may have had claims that were ripe and severable, in the interest of judicial economy, it had the discretion to dismiss those claims as well. The Intermediate Court of Appeals affirmed the circuit court's order.

In his application, Blake argues that all eight of his claims were ripe for adjudication.  We agree.  First, we hold that the Planning Commission's final approval of Knudsen's subdivision application constituted "final agency action" for purposes of ripeness.  Based on this conclusion, we hold that the allegations in Counts 1-5 were ripe because they will not be affected by the BLNR's decision regarding Hapa Road, and that Count 6 is ripe because it requires no further factual development for purposes of ripeness.  We also hold that the conduct alleged in Counts 7 and 8 has already occurred and therefore those claims are ripe.  Lastly, we conclude that the circuit court erred in dismissing claims on the basis of judicial economy.  Accordingly, we vacate the circuit court's final judgment and the ICA's judgment on appeal, and remand the case to the circuit court for further proceedings.

_____

[2]     The Honorable Randal G.B. Valenciano presided.

## I.  Background

The following factual background is taken from the record on appeal.

## A.  Village at Po'ipū Development

On April 9, 2003, the Knudsen Trust filed an application with the Planning Commission to subdivide approximately 208 acres of land it owned in Kōloa, Kaua'i, to implement Phase I of its planned residential community development, the Village at Po'ipū (hereinafter referred to as "the development").  The development consisted of approximately twenty acres of land bordered on the west by Hapa Road.[3]

A copy of the Knudsen Trust's application was sent to the DLNR's State Historic Preservation Division (SHPD).  SHPD issued a letter to Planning Director Costa recommending that conditions be attached to the Village at Po'ipū project, including, inter alia: conducting an archaeological inventory survey of the parcels of land in the application, submitting a report to SHPD for review and approval, and developing detailed mitigation plans if significant historic sites are recommended for mitigation.

The Planning Commission subsequently granted tentative subdivision approval for the development project.  To obtain

---

[3]     As discussed further infra, Hapa Road is a "significant historic site" that is afforded protections under the State's historic preservation laws.

-4-

final approval, the Knudsen Trust was required to comply with the requirements set forth by SHPD.

SHPD later received the "Interim Protection Plan" for the development, which identified numerous significant historic sites located in the vicinity of the development.  One of the sites identified in the Interim Protection Plan was Hapa Road: "Hapa road is a single lane unpaved road connecting Kōloa Town to the beach road (Po'ipū).  The road is marked by a stacked boulder wall on both sides."[4]

The Interim Protection Plan called for "an orange colored plastic barricade fencing" along the east side of Hapa Road and the rock wall "during all construction and landscaping activities in the vicinity."  The Interim Protection Plan also provided, "At no time shall any construction work take place within the buffer zone."

In a March 30, 2005 letter, SHPD Administrator Melanie Chinen "concur[red]" with the Interim Protection Plan.

---

[4]    The Interim Protection Plan further stated:

> A brief inspection of historic maps gives some insight into the history and age of Hapa Road and its associated walls.  Hapa Road is at least 100 years old.  It appears on the Monsarrat Map of 1891.  The road probably dates back to the 1850s when the Catholic Church was built makai of Kōloa Town on the west side of the road and probably predated this period as a mauka/makai trail.  The road shows on all maps postdating 1891, including sugar field maps at the Kōloa Sugar Company.  Because the rocky lands on either side of the road were used for cattle grazing, the walls were necessitated as pasture boundaries and to allow driving of cattle along the road during the early part of this century.

In November 2006, the Knudsen Trust completed a final environmental impact statement (Final EIS) for its Village at Po'ipū development.  The Final EIS discussed Hapa Road:

> A portion of Hapa Road will be improved as a pedestrian and bicycle path as mandated by the County of Kaua'i.  The historic rock walls will be preserved in place where they are in good condition and restored where they have collapsed or have been damaged by stone robbing.

The State Land Use Commission approved the Final EIS that same month.

In a January 8, 2009 letter, SHPD's administrator noted:

> We have reviewed the Draft Archaeological Data Recovery Plan for an Approximately 60 ft Wide Portion of Hapa Road, SIHP # 50-30-10-0992, Koloa Ahupuaa, Koloa District, Kauai.[5]  The breach of Hapa road will have an effect, with agreed upon mitigation, on a significant historic site.  In order to mitigate the effect we have requested, and the Trust has agreed to restore 2,000 Linear Feet of the west side of the Hapa Road Rock wall beginning at the railroad berm and heading north to roughly match the eastern rock wall at each corresponding point.  This work is to be completed by January 8, 2029.

At a January 13, 2009 meeting, the Planning Commission granted final subdivision approval of the development.

---

[5]     A subsequent, Final Archaeological Data Recovery Plan called for creating an approximately 60 foot wide breach of Hapa Road by manually deconstructing the rock walls adjacent to Hapa Road, to allow for access to the proposed subdivision.  The purpose of the Data Recovery Plan was to adequately mitigate the proposed impact to Hapa Road and to satisfy the regulations of SHPD.  The Data Recovery Plan noted,

> [t]he SHPD concurrence on the breaching and reconstruction of the wall segments detailed above is contingent upon a commitment by Knudsen Trust to reconstruct 2,000 linear feet of the western wall of Hapa Road to roughly match the dimensions of the wall on the adjacent east side of the road beginning at the railroad berm and going north.

**B.    Circuit Court Proceedings**

Blake timely filed a complaint against the Defendants. In his complaint, Blake asserted six counts: (1) that the Defendants failed to fulfill the obligations imposed upon them by the public trust doctrine (Count 1); (2) that the County Defendants failed to "thoroughly investigate and protect Native Hawaiian rights" when they considered the Knudsen Trust's application (Count 2); (3) that the Defendants failed to comply with the requirements of Hawai'i Administrative Rules (HAR) chapter 13-284, the rules governing procedures for historic preservation review to comment on projects subject to Hawai'i Revised Statutes (HRS) chapter 6E (Count 3); (4) that the subdivision approval and construction, based upon an improper and incomplete historic preservation review process, threatened to cause irreparable injury to burial sites and other historic sites (Count 4); (5) that because the Knudsen Trust's land is located within the State's coastal zone management area, the Planning Commission was obligated to give "full consideration of historic and cultural values prior to decisionmaking[,]" including consideration of the objectives of HRS chapter 205A, the Coastal Zone Management Act (CZMA), such as the protection, preservation, and restoration of historic and prehistoric resources in the coastal zone management area that are significant to Hawaiian history and culture (Count 5); (6) that the Knudsen Trust would breach a part of Hapa Road to allow vehicular traffic into its

development; the impact of this breach, Blake argued, was not addressed in the Final EIS, even though the breach of Hapa Road was a "significant change in scope and use and is, as such, a different action for which a supplemental [EIS] is required" (Count 6).

Blake subsequently filed a motion to amend his complaint. In his memorandum in support of his motion to amend his complaint, Blake stated that, contrary to all the parties' assumption, Hapa Road was owned by the State and not the County of Kaua'i. On August 20, 2009, Blake filed a first amended complaint. In his first amended complaint, Blake reasserted his previous six counts, alleged that "Hapa Trail is owned by the State of Hawai'i," and added two additional counts: Count 7 alleged that the Knudsen Trust caused a public nuisance in altering Hapa Road without appropriate government authorization; and Count 8 alleged that the Knudsen Trust was negligent when it altered Hapa Road without appropriate government authorization.

The parties filed numerous motions for summary judgment and joinders. Relevant to this appeal, Blake filed a motion for partial summary judgment on Counts 1-6 of his first amended complaint.

The State Defendants filed a motion for summary judgment as to all counts of Blake's first amended complaint. In its memorandum in support of its motion, the State Defendants argued, inter alia, that Blake's claims were not ripe because the

Knudsen Trust was "prohibited from going forward on [the development] until such time as [it] receives approval from the [BLNR] for an easement across Hapa Road." The State Defendants asserted that Blake failed to satisfy the two-pronged test for ripeness because final agency action was needed for the development to go forward.[6]

The circuit court held a hearing on the various motions, but continued the hearing and requested supplemental briefing on the issue of the court's subject matter jurisdiction. The parties filed supplemental memoranda on the issue of ripeness and subject matter jurisdiction.

Following a continued hearing, the circuit court filed its order granting the State Defendants' motion for summary judgment. The circuit court determined:

> Ripeness is an issue of subject matter jurisdiction. In determining whether a particular case is ripe the court must look at the facts as they exist today. The courts have developed a two part test to determine if a matter is ripe. The two prongs of the test are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Both prongs must be present. The fitness element requires that the issue

---

[6] This court has set forth the following test for ripeness:

The ripeness inquiry has two prongs: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. The fitness element requires that the issue be primarily legal, need no further factual development, and involve a final agency action. To meet the hardship requirement, a party must show that withholding judicial review would result in direct and immediate hardship and would entail more than possible financial loss.

Office of Hawaiian Affairs v. Hous. and Cmty. Dev. Corp. of Hawai'i, 121 Hawai'i 324, 336, 219 P.3d 1111, 1123 (2009) (citation omitted).

> be primarily legal, need no further factual development, and involve a final agency action.
>
> This [c]ourt finds that Hapa Road, also known as Hapa Trail, is owned by the State of Hawaii. The subdivision plan submitted by [the Knudsen Trust] to [the Planning Commission], which is the subject of this lawsuit, required access across Hapa Road. This [c]ourt further finds that there has been no final agency action as state agency action giving permission for the use and breach of Hapa Road has not been taken. This matter is not ripe and this [c]ourt lacks subject matter jurisdiction. To the degree that there may be issues that are severable and ripe, this [c]ourt will decline to exercise jurisdiction based on considerations of judicial economy. This matter is hereby dismissed as to all counts and all parties.

(Citations omitted).

The circuit court entered its final judgment in favor of the Defendants and against Blake, and Blake timely filed a notice of appeal.

**B. ICA Appeal**

In his opening brief, Blake raised two points of error: (1) that the circuit court erred in granting the State Defendant's motion for summary judgment and concluding that the case was not ripe; and (2) that the circuit court erred in failing to grant summary judgment in his favor on all counts. Blake argued the merits of all his claims, and explained how each claim was ripe for adjudication. Blake also contended that "even if one of the counts was not ripe, judicial economy is not served by dismissing all the other counts. This is especially true given the thousands of dollars expended in this case and the volume of the record. All the counts that are ripe can be resolved independent of whatever count may be unripe."

In its answering brief, the County Defendants conceded that Counts 1-5 were ripe for adjudication, but argued that each of Blake's allegations against them (Counts 1-6) were without merit.

The State Defendants filed an answering brief and argued that the case was not ripe inasmuch as there needed to be further factual development as to what actions would be taken by the parties, and the State, as owner of Hapa Road, had not taken final action as to whether to grant or deny an easement across Hapa Road. The State Defendants also asserted that the circuit court correctly dismissed all the other claims in the interest of judicial economy. The State Defendants contended that "[d]eciding less than all of the issues would inevitably lead to piecemeal litigation. The circuit court's decision to dismiss all claims should be affirmed."

The Knudsen Trust filed an answering brief and argued that Blake's claims were not ripe because further factual development is needed and there was no final agency action, and that Blake's claims were without merit.

Blake filed a reply to each of the Defendants' answering briefs, and reasserted his argument that the issues were ripe for adjudication and that the ICA should grant summary judgment in his favor.

In a memorandum opinion, the ICA determined that the circuit court did not err in its determination that certain

counts were not ripe for adjudication inasmuch as there was no final agency action. Blake, 2012 WL 3600347, at **2-4. In addition, the ICA concluded that the circuit court did not err in dismissing all the other claims in the interest of judicial economy. Id. at *3. Although the ICA mentioned Count 6 in its discussion, it did not expressly state which counts were not ripe and which counts were dismissed in the interest of judicial economy. Id. The ICA affirmed the circuit court's final judgment.

Blake timely filed his application for writ of certiorari, and raises the following questions:

1. Is this case ripe for adjudication? Related to this question:
   a. Is a complaint that seeks to protect historic properties ripe when (a) some damage to historic property has already occurred, (b) provisions of HRS Chapter 6E have already been violated, (c) construction of the project that threatens historic properties has commenced, and (d) more damage is likely to occur?
   b. Is final subdivision approval "final agency action"?
   c. If a landowner receives final subdivision approval that allows construction that threatens historic property to proceed, is that final subdivision approval sufficiently final for the purposes of ripeness?
   d. Does "final agency approval" refer to the agency that gave the approval that is being challenged?
   e. Is "final agency approval" different than "final project approval" when a developer must receive approval from multiple agencies?
2. Did the Circuit Court have subject matter jurisdiction to consider this case?

3.     Should [Blake's] motions for partial summary
       judgment have been granted?[7]

The Defendants filed separate responses to Blake's

application, and Blake filed replies to each.

## II.  Standard of Review

"It is axiomatic that ripeness is an issue of subject

matter jurisdiction.  Whether a court possesses subject matter

jurisdiction is a question of law reviewable de novo."  Kapuwai

v. City & Cnty. of Honolulu, Dep't of Parks & Recreation, 121

Hawai'i 33, 39, 211 P.3d 750, 756 (2009) (citation and quotation

marks omitted).

## III.  Discussion

The primary issue is whether Blake's claims against the

Defendants are ripe for adjudication.  In determining whether a

claim is ripe, this court has stated:

> Because ripeness is peculiarly a question of timing,
> the court must look at the facts as they exist today
> in evaluating whether the controversy before us is
> sufficiently concrete to warrant our intervention.
> The ripeness inquiry has two prongs: the fitness of
> the issues for judicial decision and the hardship to
> the parties of withholding court consideration.  The
> fitness element requires that the issue be primarily
> legal, need no further factual development, and

---

[7]     As discussed below, we conclude that Blake's claims are ripe, but remand rather than addressing whether Blake is entitled to summary judgment. We agree with the concurring and dissenting opinion that this court may, in appropriate circumstances, decide a motion for summary judgment without remand.  However, the claims at issue in the instant case arise out of a complex set of facts that have not yet been considered by the circuit court. In these circumstances, we decline to decide whether partial summary judgment should be entered in favor of either party.  See Kaleikini v. Yoshioka, 128 Hawai'i 53, 81, 283 P.3d 60, 88 (2012) (declining to enter judgment in plaintiff's favor where plaintiff "sought a wide range of relief in the circuit court, and the rationale for granting or denying that relief has not been fully developed[,]" and where "additional information may have become available since the [defendant's] motion was decided, and it is not clear what impact these additional facts may have on the relief [plaintiff] seeks").

> involve a final agency action. To meet the hardship
> requirement, a party must show that withholding
> judicial review would result in direct and immediate
> hardship and would entail more than possible financial
> loss.

Office of Hawaiian Affairs, 121 Hawai'i at 336, 219 P.3d at 1123

(citation and emphasis omitted).

Blake asserted eight counts in his Amended Complaint:

(1) the State and County Defendants failed to fulfill their

public trust obligations in considering the Knudsen Trust's

development proposal; (2) the Defendants failed to investigate

and protect Native Hawaiian rights; (3) the Defendants failed to

comply with HAR chapter 13-284; (4) the Defendants irreparably

injured historic sites, including burial sites; (5) the

Defendants failed to comply with the objectives, policies, and

guidelines of the Coastal Zone Management Act; (6) the Defendants

failed to submit or require a supplemental EIS for the proposed

breach of Hapa Trail; (7) the Knudsen Trust caused a public

nuisance by failing to preserve and by altering Hapa Road without

appropriate government authorization; and (8) the Knudsen Trust

was negligent in failing to preserve the Hapa Road and its

adjacent walls.

In its order granting the State Defendants' motion for

summary judgment, the circuit court determined, in relevant part:

> This [c]ourt further finds that there has been no
> final agency action as state agency action giving
> permission for the use and breach of Hapa Road has not
> been taken. This matter is not ripe and this [c]ourt
> lacks subject matter jurisdiction. To the degree that
> there may be issues that are severable and ripe, this
> [c]ourt will decline to exercise jurisdiction based on

> considerations of judicial economy.  This matter is
> hereby dismissed as to all counts and all parties.

(Emphasis added).

On appeal, the ICA determined that the circuit court "correctly concluded that it did not have subject matter jurisdiction over this case" and that the circuit court did not err in dismissing "all other claims" in the interest of judicial economy.  Blake, 2012 WL 3600347, at *3 (emphasis added).

It is unclear from both the circuit court's order and the ICA's memorandum opinion which claims were dismissed based on judicial economy, and which claims were dismissed as unripe.  As discussed below, however, the ICA erred in affirming the circuit court's final judgment because all of the claims are ripe for adjudication.  In any event, the circuit court lacked the authority to dismiss claims based on judicial economy.

## A.   All Counts are ripe for adjudication

Because the parties' arguments concerning ripeness focus on whether final agency action has occurred in this case, we first address the meaning of "final agency action."  We then address Blake's claims in sequence.

### 1.   The Planning Commission's final approval constituted "final agency action" for the purposes of ripeness

The question of whether a claim involving an agency's decision is ripe for adjudication involves a two-pronged analysis: (1) "that the issue be primarily legal, need no further factual development, and involve a final agency action"; and (2)

-15-

that "withholding judicial review would result in direct and immediate hardship and would entail more than possible financial loss."[8]  Office of Hawaiian Affairs, 121 Hawai'i at 336, 219 P.3d at 1123.

Blake argues that the circuit court's conclusion that "final agency action" has not occurred was "based on the false premise that 'final agency action' is the same thing as 'final project approval from all agencies.'"  Blake further contends that this court has previously determined that there was final agency action even when there were pending conditions on a final approval of a permit, and that "[f]inal agency action refers to the agency's [sic] whose decision is being challenged - not some other agency whose approval for a project may also be necessary."  As explained below, we agree with Blake and hold that the Planning Commission's approval constituted "final agency action" for purposes of ripeness.  Thus, the BLNR's determination as to whether it will allow an easement over Hapa Road is not relevant to our ripeness analysis.

This court has yet to set forth principles to determine when an action is a "final agency action" under the aforementioned two-pronged analysis.  Nevertheless, ICA cases implicitly addressing the issue are instructive.  See, e.g., Pele

_____

[8]    In their filings with this court, the Defendants only argue that Blake's claims were not ripe because there was no final agency action and there was a need for further factual development.  The Defendants do not argue that Blake failed to satisfy the hardship requirement of the ripeness analysis, and therefore, any arguments to that effect are waived and not addressed here.

Defense Fund v. Puna Geothermal Venture, 8 Haw. App. 203, 204, 797 P.2d 69, 71-72 (1990); Leone v. County of Maui, 128 Hawai'i 183, 284 P.3d 956 (App. 2012).

In Leone, the appellants, owners of property located with a Special Management Area (SMA), filed an assessment application seeking a determination that their proposed use of their property as a single-family residence was exempt from SMA permit requirements. Id. at 188, 284 P.3d at 961. The Director of the Department of Planning of the County of Maui rejected the application. Id. Appellants then filed inverse condemnation claims alleging that Maui County engaged in regulatory takings by depriving their properties of any economically viable use. Id. The circuit court dismissed appellants' claims as unripe because the appellants failed to exhaust administrative remedies by not appealing the Director's decision to the Planning Commission. Id. at 189, 284 P.3d at 962. On appeal, the only issue the ICA considered was whether the claims were ripe for adjudication. Id. Within the context of a regulatory taking and distinguishing between issues of ripeness and exhaustion of administrative remedies, the ICA held, inter alia, that "the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Id. at 193, 284 P.3d at 966 (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)). The ICA concluded that

the Director's decision to reject the appellants' application "satisfied the finality requirement for ripeness by setting forth a <u>definitive position</u> regarding how [the] County will apply the regulations at issue to the particular land in question." <u>Id.</u> (emphasis added).

In <u>Pele Defense Fund v. Puna Geothermal Venture</u>, 8 Haw. App. 203, 203, 797 P.2d 69, 70 (1990), the ICA addressed whether the attachment of a condition to a permit would affect the finality of the decision for purposes of appeal. The appellants, Pele Defense Fund and numerous individuals, appealed the Hawai'i County Planning Commission's award of a geothermal resource permit to Puna Geothermal Venture. <u>Id.</u> at 204-05, 797 P.2d at 70. The permit contained fifty-one attached conditions, including Condition 51, which established a Geothermal Asset fund for the purpose of geothermal impact mitigation efforts, into which the State of Hawai'i and Puna Geothermal Venture would contribute funds. <u>Id.</u> at 206-08, 797 P.2d at 71-72. The appellants argued, inter alia, that the "matter [was] not ripe for appeal, since it [had] not been shown that Condition 51 attached to the permit [could] be fulfilled." <u>Id.</u> at 206, 797 P.2d at 71. The ICA determined that "[a]ppellants' argument [was] without merit," and that "[s]uch conditions do not per se affect the <u>finality of the approval of the permit for purposes of appeal</u>." <u>Id.</u> at 208-09, 797 P.2d at 72 (emphasis added). The ICA reasoned:

-18-

> Condition 51 is similar to many of the other 50
> conditions of the permit in that it is prospective in
> nature. For example, Respondent is required to submit
> status reports pursuant to conditions 4 and 5, submit
> environmental monitoring data under condition 6,
> maintain records in accordance with condition 7, and
> submit copies of approved permits from all applicable
> federal, state, and county agencies before initiating
> construction of the project under condition 25. Such
> conditions do not per se affect the finality of the
> approval of the permit for purposes of appeal.
>
> Whether or not condition 51's terms have been complied
> with becomes pertinent when Respondent applies for its
> first building or construction permit. Presumably, it
> will not be able to obtain any permit unless condition
> 51 has been met. In that event, condition 25 prevents
> Respondent from commencing any work. Also, if
> condition 51 has not been met, Respondent will be
> required to correct the non-compliance. In the event
> they do not, the Commission is authorized to revoke or
> modify the permit.

Id. at 208-09, 797 P.2d at 72 (citations and footnote omitted).

Thus, the ICA determined that the challenge to the

Hawai'i County Planning Commission's approval of a permit could

proceed regardless of Puna Geothermal Venture's need to obtain

additional approvals from other agencies.

Although not in the context of ripeness, this court has

addressed an agency's action, such as granting a permit, even

though there were additional conditions that were necessary

before the applicant could commence the project. See, e.g.,

Mahuiki v. Planning Comm'n, 65 Haw. 506, 511-14, 654 P.2d 874,

877-79 (1982) (holding that this court had "no difficulty in

concluding the appeal was from a final decision," even though

there were subsequent decisions yet to be made on the challenged

permit).

From these cases, it appears that finality for purposes

of ripeness involves a decision of the agency whose "definitive

position" on a matter is being challenged, and a decision of that agency is final for purposes of ripeness even if there are other approvals or conditions that still need to occur.[9]  Leone, 128 Hawaiʻi at 193, 284 P.3d at 966; Pele Defense Fund, 8 Haw. App. at 209, 797 P.2d at 72; see also Mahuiki, 65 Haw. at 511-14, 654 P.2d at 877-79.

Applying the foregoing principles to this case, it is clear that the Planning Commission's final approval of the Knudsen Trust's subdivision application was "final agency action" for purposes of ripeness.  Here, the Planning Commission granted "final approval" to the Knudsen Trust on January 13, 2009, which was months before Blake discovered that Hapa Road was owned by the State.  Although BLNR would need to grant an easement over Hapa Road, the pendency of that approval does not "per se affect the finality of the [Planning Commission's] approval of the [subdivision application] for purposes of appeal" because Blake is challenging the Planning Commission's action, and not the action of BLNR.  See Pele Defense Fund, 8 Haw. App. at 209, 797 P.2d at 72.  The Planning Commission's final approval also

---

[9]     This rule appears to be consistent with other jurisdictions. Generally, other jurisdictions have determined that "[i]n order for agency action to be final, the action must mark the consummation of the agency's decision-making process, rather than merely be tentative or interlocutory in nature, and the action must be one by which rights or obligations have been determined or from which legal consequences will flow."  Laura Hunter Dietz, et al., Administrative Law, 2 Am. Jur. 2d § 459; see, e.g., Bennett v. Spear, 520 U.S. 154, 177-78 (1997) ("As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process —it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]" (citations omitted)).

appears to have been the County's "definitive position" on the Knudsen Trust's subdivision application. See Leone, 128 Hawai'i at 193, 284 P.3d at 966. Indeed, Planning Director Ian Costa sent the Knudsen Trust a letter indicating that the subdivision was "granted final approval by the Planning Commission at their meeting held on January 13, 2009," which comports with the Planning Commission's rules for service of decisions. See Rules of Practice and Procedure of the Kauai County Planning Commission (Rules of the Planning Commission) Rule 1-6-18(g) (1987) ("Decisions [of the Planning Commission] shall be served in writing by the Director by mailing copies thereof . . . to the Parties of record."). Additionally, aside from challenging violations of specific terms or conditions of an otherwise valid permit, see Rules of the Planning Commission Rule 1-12 (1987) (authorizing the revocation and modification of permits), there appear to be no further administrative remedies by which to challenge the Planning Commission's determination to grant final subdivision approval.[10] Consistent with that view, the Rules of the Planning Commission provided that the Commission's approval took effect on the date of the meeting, January 13, 2009. See Rules of the Planning Commission Rule 1-2-6 (1987) ("Unless a specific effective date is set forth, the effective date of a decision rendered by the Commission shall be the date of the

---

[10] Moreover, the record does not establish nor do the parties argue that the Planning Commission has withdrawn its final approval of the Knudsen Trust's application in light of the new information regarding the ownership of Hapa Road.

Meeting at which such valid decision was made."). Thus, in the circumstances of this case, the Planning Commission's approval, while given without the BLNR's consent to an easement, was nevertheless final agency action for purposes of ripeness.

Furthermore, the record reflects, and the Defendants do not dispute, that construction commenced on the property following the Planning Commission's final approval of the subdivision. In Kapuwai, this court held:

> The rationale underlying the ripeness doctrine and the traditional reluctance of courts to apply injunctive and declaratory remedies to administrative determinations is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties.

121 Hawaiʻi at 41, 211 P.3d at 758 (emphasis in original).

The commencement of construction after the Planning Commission voted on January 13, 2009 to grant final subdivision approval is clearly an "effect" of that decision. Id. This further supports the inference that the Planning Commission's approval of the Knudsen Trust's subdivision application was final agency action for purposes of ripeness.

## 2. Counts 1-5 are ripe for adjudication

Counts 1-5 are ripe for adjudication because, as stated, the Planning Commission's approval of the subdivision constituted a "final agency action" regardless of where the access point was located. Moreover, the determination of the

FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

access point to the development will not materially affect these claims.

In Count 1, Blake alleged that the Defendants failed to fulfill their public trust obligations with respect to (1) "destroyed historic sites"; (2) alterations to Hapa Road; and (3) the Knudsen Trust's lack of compliance with the Interim Protection Plan. In his motion for summary judgment, Blake alleged that the County Defendants failed to fulfill their public trust obligations by (1) approving the development without reviewing relevant documents or completing the historic preservation review process and (2) failing to enforce relevant provisions of the County Code and a zoning ordinance. Blake also alleged that the State Defendants failed to fulfill their public trust duties because SHPD's review of the development was flawed, and also alleged that the State Defendants failed to take enforcement action pursuant to HRS chapter 6E for the Knudsen Trust's alleged violations of the Interim Protection Plan. The selection of an access point to the development is not determinative of the government Defendants' obligation to enforce the laws and to make decisions in a manner consistent with constitutional, statutory, and administrative authority. Thus, Count 1 is ripe.

In regard to Count 2, Blake asserted that the County Defendants had an obligation to investigate and protect Native Hawaiian rights pursuant to article XII, section 7 of the Hawaii

Constitution, before granting the Knudsen Trust's subdivision application. Blake, citing this court's decision in <u>Ka Pa'akai o Ka 'Aina v. Land Use Commission</u>, 94 Hawai'i 31, 45, 7 P.3d 1068, 1082 (2000), contended that the County Defendants had an independent obligation to consider the effects of their actions on Native Hawaiian traditions and practices. Blake argued that "at a minimum[,]" the County Defendants were required to make specific findings and conclusions on the extent to which traditional and customary Native Hawaiian rights are exercised in the area, the extent to which those rights would be affected or impaired by the action, and the feasible action, if any, to be taken to protect any Native Hawaiian rights. Blake asserted that the Planning Commission made no such findings. The allegation that the Planning Commission failed to consider traditional Native Hawaiian rights is ripe for adjudication because the determination of the access point to the development had little if any bearing on any alleged traditional or cultural rights that may be practiced within the development, and on the adequacy of the Planning Commission's consideration of those rights.

Count 3 alleged that the Defendants failed to comply with the requirements of HAR chapter 13-284, the historic preservation review process established to protect historic sites. In his motion for summary judgment, Blake argued that the State and County defendants violated HAR chapter 13-284 by allowing the project to advance before the historic preservation

review process was completed, and by relying on "outdated and flawed reports."  Specifically, Blake contended that HAR chapter 13-284 was violated when (1) the Planning Commission granted the Knudsen Trust tentative subdivision approval without completing the historic preservation review process or taking into account the impact on historic properties; (2) SHPD "did not make clear" that the review process must be completed prior to project approval; (3) various steps in the review process were not completed or were completed improperly; and (4) the Planning Commission granted final subdivision approval despite a flawed review process.  Blake also argued that the Knudsen Trust failed to comply with the approved Interim Protection Plan.  Although Count 3 appears to include arguments regarding Hapa Road,[11] Blake's contentions focus on the failure of the Defendants to follow the historic review process, a determination that can be made regardless of whether Hapa Road is used as the access point to the development.  Thus, Count 3 is ripe.

In Count 4, Blake alleged that injunctive relief was warranted because "[s]ubdivision approval and construction, based upon an improper and incomplete historic review process, threaten to cause irreparable injury to burial sites and other historic sites."  Blake asserted in his motion for summary judgment that:

> Knudsen damaged the walls associated with Hapa Trail
> without authorization; placed a waterline on historic

---

[11]     Blake argues in his motion for summary judgment that the Planning Commission granted final subdivision approval before SHPD approved all the mitigation plans for the area including Hapa Road.

> Hapa Trail without authorization; and engaged in
> construction activities within fifty feet of Hapa
> Trail in violation of the interim protection plan.
> Knudsen also allowed historic sites on his own
> property to be destroyed despite a clear
> prohibition[.]

Blake also asserted that the Planning Commission approved the subdivision prior to completing the historic preservation review process, and without the written concurrence from SHPD required under HRS chapter 6E.  Because this claim is premised on actions that allegedly have already occurred, Count 4 is also ripe.

In Count 5, Blake alleged that the Defendants failed to comply with HRS chapter 205A, the CZMA, in failing to consider historic and cultural values.  HRS § 205A-4(a) provides that, "In implementing the objective of the coastal zone management program, the agencies shall give full consideration to ecological, cultural, historic, esthetic, recreational, scenic, and open space values, and coastal hazards, as well as to needs for economic development."  (Emphasis added).  Blake argued that "[t]he undisputed evidence in this case, however, is that the County Defendants failed to give full consideration of historic sites in the area."  Blake asserted that the Planning Commission admitted that it failed to review various archaeological reports, and still "does not have 'sufficient knowledge or information to form a belief as to' whether" dozens of archaeological sites, including the "remnants of an extensive and complex 'auwai system," have been found on the Knudsen Trust land.  Blake's

claim in Count 5 that the County Defendants failed to consider cultural and historic values in violation of the CZMA is not dependent on the determination of the access point to the development. Thus, Count 5 is ripe.

In sum, each of the claims are ripe for adjudication because the Planning Commission's approval was "final agency action" for purposes of ripeness. Furthermore, the determination of the access point to the development does not materially affect Counts 1-5.

### 3. Count 6 is ripe for adjudication because there is no need for further factual development

As stated, the first prong of the ripeness analysis requires "that the issue be primarily legal, <u>need no further factual development</u>, and involve a final agency action." <u>Office of Hawaiian Affairs</u>, 121 Hawai'i at 336, 219 P.3d at 1123 (emphasis added). The Defendants argue that further factual development is necessary as to Count 6, regarding the necessity of a Supplemental EIS to address a breach of Hapa Road, because it is unclear whether the BLNR will grant an easement over Hapa Road to allow access to the development. We disagree, and conclude that Count 6 is ripe without further factual development.

In determining whether a claim is ripe, the circuit court must "look at the facts as they exist" at the time it makes its decision. <u>Id.</u> In Count 6 of his Amended Complaint, Blake alleged that the Defendants failed to provide a supplemental EIS

-27-

that specifically covered the breach of Hapa Road. Blake further alleged that the Knudsen Trust "will breach a portion of Hapa Trail to allow vehicular traffic" and that the Final EIS did not "address the impact of this breach."

In its Answer to Blake's Amended Complaint, the Knudsen Trust admitted that "vehicular access to Phase I has <u>always been across Hapa Road/Trail as shown, disclosed and discussed in the Environmental Impact Statement and other filings with the County of Kauai</u>." (Emphasis added). The County admitted that the "Knudsen Trust will breach a portion of Hapa Trail to allow vehicular traffic." The State admitted that the "Knudsen Trust has requested to breach a portion of Hapa [Road] and the adjoining historic wall to allow vehicular traffic." Thus, at the time the Planning Commission granted final subdivision approval of the development, all of the parties appeared to recognize that access to Phase I was intended to be by breaching Hapa Road and its adjacent wall.[12] The circuit court, however, failed to consider the necessity of a Supplemental EIS even though all the parties apparently agreed that Hapa Road would need to be breached.

Moreover, the record in this case contained the Final EIS, which would need to be analyzed to determine whether a Supplemental EIS was necessary.

---

[12] The Defendants argue, and Blake recognizes, that Count 6 could become moot if another access point to Phase I is considered. However, there is no indication in the record before this court of any other alternative access point to Phase I.

Inasmuch as the parties intended for Hapa Road to be breached and the Final EIS is contained in the record, the question of the necessity of a Supplemental EIS was ripe for review, regardless of BLNR's approval. Accordingly, the circuit court had subject matter jurisdiction to address Count 6 because that claim was ripe.

> **4. Blake's claims that the Knudsen Trust caused a public nuisance and was negligent when it altered historic sites (Counts 7 and 8) are ripe for adjudication**

In Counts 7 and 8, Blake contended that the Knudsen Trust caused a public nuisance and was negligent when it altered Hapa Road without appropriate government authorization. In its response, the Knudsen Trust does not argue that Counts 7 and 8 were not ripe for adjudication; instead, it contends that Counts 7 and 8 fail as a matter of law.

Because Counts 7 and 8 involve allegations that the Knudsen Trust altered Hapa Road, Blake's claims involve alleged conduct that has already occurred. Counts 7 and 8 pertain to two incidents in which the Knudsen Trust, or its agents, allegedly altered the walls associated with Hapa Road. The decision as to whether Hapa Road is used as an access to the development is irrelevant to the resolution of these claims. Therefore, Counts 7 and 8 are ripe and should have been adjudicated.

Accordingly, all Counts are ripe for adjudication.

## B. The circuit court erred in dismissing Blake's claims on the basis of judicial economy

The circuit court dismissed Blake's case even though it acknowledged that some unspecified claims may have been severable and ripe. The Defendants fail to cite any authority that expressly allows a court to decline to exercise jurisdiction based on judicial economy. We conclude that the dismissal of ripe claims in the instant case was improper.

Our case law indicates that the proper course for a court faced with a complaint asserting both ripe and unripe claims is to either proceed on the ripe claims, or to stay some or all of the ripe claims in the interest of judicial economy. For example, in Save Sunset Beach Coalition v. City & County of Honolulu, 102 Hawai'i 465, 78 P.3d 1 (2003), this court reached the merits of several claims even though one particular count was not ripe for adjudication. There, the plaintiffs filed an amended complaint asserting ten counts. Id. at 470-72, 78 P.3d at 6-8. The circuit court dismissed four counts on the ground that the issues raised were "premature." Id. at 471, 78 P.3d at 7. At a bench trial, the circuit court decided in favor of the defendants on the remaining six counts. Id. at 472, 480, 78 P.3d at 8, 16. On appeal, this court determined that one of the adjudicated counts was not ripe, yet still addressed the merits of several other claims raised by the plaintiffs. Therefore, it is clear that the circuit court and this court can address the merits of some claims even when other claims are unripe.

Alternatively, the court may consider whether a stay

with respect to some or all of the ripe claims is appropriate. See City of Honolulu v. Ing, 100 Hawai'i 182, 193 n.16, 58 P.3d 1229, 1240 n.16 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[13] (quoting Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 880 (1998))). A stay may be appropriate where proceeding with the litigation will result in unnecessary duplication of effort, such as where the issues to be decided are inextricably intertwined with or affected by the resolution of other pending matters. See Chronicle Pub. Co. v. Nat'l Broad. Co., 294 F.2d 744, 748-49 (9th Cir. 1961) (concluding it was not an abuse of discretion to grant a stay where, "[t]o a large extent the problems are intertwined with or may likely be affected by the matters which are now pending" in other proceedings, and noting that "the avoidance of unnecessary duplication of effort in such matters as these is a valid consideration"); Eggleston v. Pierce County, 99 F. Supp. 2d 1280, 1282 (W.D. Wash. 2000) (staying proceedings in the interest

---

[13] A court's discretion to stay proceedings for purposes of judicial economy is not without limitations. Cf. Sapp v. Wong, 62 Haw. 34, 41, 609 P.2d 13, 142 (1980) (noting that a "wide variety of circumstances may arise which call for the exercise of judicial discretion in determining whether to grant or refuse a continuance[,]" including whether a continuance would be prejudicial to the opposing party, or whether the denial of a continuance would prevent the moving party from having a reasonable opportunity to present its case on the merits).

of comity and judicial efficiency, where the plaintiff's federal claims were "inextricably intertwined" with state court appellate proceedings); cf. D.L. v. Unified School Dist. No. 497, 392 F.3d 1223 (10th Cir. 2004) (holding that the district court should have stayed proceedings on one claim even though it lacked jurisdiction to resolve the remaining claims because of a pending state court proceeding); Certain Underwriters at Lloyd's, London v. Boeing Co., 895 N.E.2d 940 (Ill. App. Ct. 2008) (affirming the trial court's order staying a complaint until the completion of an underlying international arbitration); Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823 (D.R.I. 2004) (noting that the action was not ripe for adjudication, but was stayed until the out-of-state cases were resolved).

We note that the ICA in the instant case cited to two cases to support its conclusion that the circuit court could dismiss ripe claims based on judicial economy. Blake, 2012 WL 3600347, at *3 (citing Hawai'i Hous. Auth. v. Lyman, 68 Haw. 55, 78, 704 P.2d 888, 902 (1985); Kauhane v. Acutron Co., 71 Haw. 458, 463, 795 P.2d 276, 278 (1990)). However, neither Lyman nor Kauhane supports the proposition that a court can dismiss a ripe claim in these circumstances. In Lyman, this court determined that a trial court is vested with discretion to certify a claim under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) "after weighing the advantage of expedited appeal against the potential for waste of judicial resources and equitable arguments for

delay." 68 Haw. at 78, 704 P.2d at 902 (citation omitted). In Kauhane, this court noted that the doctrine of res judicata serves to conserve judicial resources. 71 Haw. at 463, 795 P.2d at 278. Although both cases articulated general principles regarding the importance of judicial economy, neither case held that a circuit court could dismiss a ripe claim on that ground.

Thus, the circuit court erred in dismissing Blake's case on the basis of judicial economy.

### IV. Conclusion

For the foregoing reasons, the circuit court's final judgment and the ICA's judgment on appeal are vacated, and the case is remanded to the circuit court for further proceedings.

| | |
|---|---|
| David Kimo Frankel and Ashley K. Obrey for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Ian K. Jung for respondents County of Kaua'i Planning Commission, County of Kaua'i Planning Department, and Costa | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Linda L.W. Chow for respondents DLNR and Aila | |
| Michael D. Tom and Joseph F. Kotowski, III, for respondent Wong | |

